IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **DEAN BARRETT**, <br> Plaintiff, <br><br> vs. <br><br> **SELENE FINANCE LP,** <br> Defendant. | **Case No: 4:17-cv-00985-BCW** |

**PLAINTIFF'S MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, Dean Barrett, moves for preliminary approval of the class action settlement reached between himself and Defendant Selene Finance LP ("Selene") (the "Parties").

This case presents a putative nationwide class action filed under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Selene vigorously denies these allegations. On February 15, 2018 Magistrate Judge Sarah W. Hays conducted a mediation of this case. While the mediation resulted in impasse, the Parties continued to conduct discovery and hold settlement discussion thereafter, and reached a settlement resolving the claims of Plaintiff and the Settlement Class. A copy of the Settlement Agreement and Release ("Agreement") is attached hereto as **Appendix 1**.

To resolve this litigation, Selene agreed to pay $50,150 non-reversionary fund to satisfy the Class's claim for statutory damages, to be divided *pro rata* among those of the approximately 68 class members who do not opt-out. There is no claim form requirement such that every class member will receive a check for approximately $425.00 - $2,975.00. The individual class member's check will depend on the number of times Selene accessed their consumer report.

In addition to the settlement fund, Selene has agreed to pay administration costs, fees and incentive award separately such that the fund will be only used to pay class members.

The parties will endeavor to agree upon the reasonable amount of attorney's fees and costs,

as well as the incentive award for the Named Plaintiff. Plaintiff will petition the Court within 30 days of preliminary approval of the Agreement, noting whether Selene agrees with the amounts sought in said petition.

Moreover, the settlement requires notice to be sent to the class members advising them of the right to opt-out, as provided by Federal Rule 23, thus giving class members the choice of pursuing their own individual claim or staying in the class and receiving a share of the class recovery.

Plaintiff submits this Memorandum in support of his Motion for Preliminary Approval of Settlement, certification of the class for purposes of settlement, and approval of the form, manner, and administration of notice. A final motion and proposed order supporting the fairness of the proposed settlement will be submitted after members of the Settlement Class have received notice and have had an opportunity to object/comment or opt-out, and prior to the Court's Final Approval Hearing. For the reasons set forth in detail below, the proposed settlement is reasonable, fair, and adequate, and it should be approved by the Court.

## I. NATURE OF THE LITIGATION

### A. Litigation, Mediation, and Settlement

On October 16, 2017, Mr. Barrett individually and on behalf of a putative class, filed a complaint in the Jackson County Circuit Court. On November 24, 2017, the case was removed to the United States District Court for the Western District of Missouri. Plaintiff alleged that Selene willfully violated the FCRA § 1681b(f) by improperly accessing credit reports without a legally permissible purpose to do so. Specifically, that Selene obtained consumer reports of individuals after those individuals received a discharge in bankruptcy, eliminating any pre-existing debt or obligation to Selene.

In December 2017, Plaintiff propounded written discovery upon Selene. In the weeks prior to the mediation, in an effort to narrow the issues, the Parties engaged in discussions to streamline discovery to the class data necessary to engage in meaningful settlement negotiations. On February 1, 2018, pursuant to the Court's Order [ECF No. 13], the Parties conducted a mediation session with Magistrate Judge Sarah W. Hays. While the Parties were unable to resolve the case during the mediation, they continued to conduct settlement discussions, including the exchange of information, in the ensuing months. Through arm's-length negotiations, on or about April 17, 2018 the Parties reached an agreement in principle to resolve the Litigation, contingent upon the negotiation and execution by the Parties of a final agreement approved by the Court. On or about July 25, 2018, the Parties executed the Agreement.

It is worth noting that the agreement provided that the parties would attempt to reach an agreement on attorney fees and costs *after* the Agreement was executed. As such, this Agreement is a great example of a good faith arms-length class settlement.

**B.     Damages Issues.**

Liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply with the statute. 15 U.S.C. §§ 1681n & 1681o. Further, unless there is a finding of a willful noncompliance, Plaintiff (and thus the Class) must establish actual damages. Statutory and punitive damages are *only* available where there is a finding of a willful violation. *See id.* As such, either the Class must proceed on a uniform "actual damages" claim, or it must pursue statutory and punitive damages under the more challenging "willfulness" standard of Section 1681n. In this case, Plaintiff pressed the claim for a willfulness remedy seeking statutory damages as a proxy for actual damages. *See e.g. Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (Finding statutory damages an appropriate class remedy to overcome the manageability

3

difficulties of compensable damages for consumers whose individual losses "are likely to be small—a modest concern about privacy, a slight chance that information would leak out and lead to identity theft.")

In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007), the Supreme Court considered the standard for whether a defendant "willfully" violates the FCRA, including whether willfulness also includes "recklessness." *Id.* at 52. While it held that the former encompassed the latter, the Court also concluded that this willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. To overcome this hurdle, it is the plaintiff's burden to prove that a defendant's attempts to comply with the FCRA were "objectively unreasonable." *Id.*

For the reasons set forth above, Selene denies liability under the FCRA.

## II. SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement are as follows:

**A.     Class Definition.** The Settlement Class is defined as follows:

The 68 persons identified in *Exhibit 1* to the settlement agreement (which was filed under seal) hereto whose consumer reports were accessed by Selene after the consumer received a bankruptcy discharge.

Notwithstanding the foregoing, in compliance with 28 U.S.C. § 455, this class specifically excludes persons in the following categories: (A) The district judge and magistrate judge presiding over this case and the judges of the United States Court of Appeals for the Eighth Circuit; (B) the spouses of those in category (A); (C) any person within the third degree of relationship of those in categories (A) or (B); and (D) the spouses of those within category (C).

Selene has determined that the Settlement Class includes the 68 persons who meet this Class Definition. Of those 68 people, Selene determined it accessed their credit reports a total of 118 times. Those persons are identified on *Exhibit 1* to the Agreement, attached as **Appendix 1** hereto.

4

**B.     Structure of the Settlement Amount.** The Agreement requires Selene to pay a non-reversionary fund of $50,150 to be divided *pro rata* among those of the 68 class members who do not opt-out. The amount the respective class member receives will depend on the number of times Selene accessed their consumer report post-discharge.

**C.     Individual Class Member Benefits.** As noted above, there is no claim form required to receive the settlement benefit. Assuming no, or a very small number of class members, opt-out, Plaintiff expects each class member to receive between $425.00 and $2,975.00, depending on the number of times Selene accessed their consumer report.

Selene has agreed to separately pay the costs of administrating the settlement as well as reasonable attorneys' fees and expenses that the Court awards to attorneys representing Plaintiff and the Settlement Class ("Class Counsel"), as well as any incentive payment the Court awards to the Named Plaintiff. So, these payments will not affect the amount that members of the Class receive. Plaintiff will petition the Court within 30 days of preliminary approval, noting in the petition whether Selene consents to the amounts sought therein.

**D.     Compensation for the Class Representative.** The typical class action settlement includes an extra payment to the class representative for their service to the class, called an "incentive award." *See*, *e.g.*, *Tennille v. Western Union Co.*, 785 F.3d 422, 428 (10th Cir. 2015). In this case, Plaintiff will request in his motion for Final Approval an incentive award of $10,000.00. The class notice will advise each class member of this request.

**E.     Payment of Attorneys' Fees and Costs.** The FCRA provides a prevailing plaintiff to recover his counsel's attorneys' fees and costs. *See* 15 U.S.C. §1681. The Agreement does not provide an amount for fees, but instead provides that attorney fees and costs will be negotiated and then submitted to the Court for approval. Any amount for attorney fees and costs awarded by the

5

Court is paid in addition to the class payment, and does not impact the amount class members will receive.

  **F.**  **Release.** In exchange for the relief described above, Mr. Barrett has provided a general release while the class has a much narrower release. The Class Release provides:

> "Released Claims" means any and all claims, demands, rights, liabilities and causes of action alleged or that could have been alleged in Named Plaintiff's Complaint or Amended Complaint in the Litigation, including, but not limited to, claims arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and any analogous state law claims for obtaining consumer reports post-bankruptcy discharge that the Settlement Class Members have or may have against the SELENE Releasees, or any of them for statutory damages, punitive damages that were asserted or could have been asserted, based on the facts alleged in the Complaint or any Amended Complaints filed in this Litigation. Released Claims does not include any claims or defenses relating to the underlying debt or properties.

*See* Agreement, attached as **Appendix 1** at p. 6-7.

  **G.**  *Cy Pres*. The Settlement Administrator shall mail, by first-class mail, a check to each Settlement Class Member eligible to receive payment, postmarked within 20 business days after the Effective Date. The Settlement Administrator will perform skip tracing and re-mailing, as reasonably necessary. After such efforts are exhausted, the Settlement Administrator will retain copies of the number of notices mailed, and the number of such notices returned as undeliverable. Any money remaining in the Settlement Fund after distribution of settlement proceeds and after the passage of the 180-day period within which the Settlement Class Members shall be able to negotiate their checks, shall be paid as *cy pres* to a 501(c)(3) charitable organization agreed upon by the Parties; or, if the Parties are unable to agree, to be decided by the Court. Once again, all of the money in the Settlement Fund will be sent to the class members and only if there is a balance from uncashed checks would any money go to *cy pres*. Except as otherwise provided in this Agreement, no money remaining in the Settlement Fund shall revert to or otherwise be paid to Selene.

### III. THE SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION UNDER FEDERAL RULE 23

To settle a case on a class basis, the class must meet the requirements for class certification. *See Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *See St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *2 (E.D. Mo. Dec. 11, 2013) (certifying TCPA class action). Class certification is appropriate if the proposed class meets the elements of Federal Rule of Civil Procedure 23, including the requirement that the plaintiff and his counsel be adequate class representatives.[1]

#### 1. The members of the Class are sufficiently numerous.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It is undisputed that the proposed Settlement Class here consists of 68 people. Thus, the Settlement Class satisfies the numerosity requirement." *In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-1186, 2005 WL 4045741, at *11 (E.D. Mo. June 30, 2005); *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity).

#### 2. Questions of law and fact are common to the Class.

"Rule 23(a)(2)'s 'commonality' requirement is satisfied if a claim arises out of the same legal or remedial theory." *In re Charter*, 2005 WL 4045741, at *11. "The plaintiff must show that 'a classwide proceeding will generate common answers apt to drive the resolution of the litigation.'" *St. Louis Heart Center*, 2013 WL 6498245, at *6 (citing *Bennett v. Nucor Corp.*, 656

---

[1] It must be noted that the superiority analysis is relaxed in the settlement context because in that context trial management considerations are not a factor. *See Amchem*, 521 U.S. at 620 (in settlement context, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citations omitted).

7

F.3d 802, 814 (8th Cir. 2011)). Importantly, Rule 23(a)(2) is construed permissively: "the interests of the various plaintiffs do not have to be identical to the interests of every class member; it is enough that they share common objectives and legal or factual positions." *In re Charter*, 2005 WL 4045741, at *11.

Here, Class Members' claims stem from the same factual circumstances, in that the Settlement Class Members' consumer reports were accessed by Selene when Selene had no legally permissible purpose to do so, in violation of the FCRA. Specifically, Class Members' consumer reports were accessed one or more times after the pre-existing obligation to Selene was discharged in bankruptcy. The theories of liability as to all Settlement Class Members arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. See Fed. R. Civ. P. 23(a). Accordingly, the commonality requirement is satisfied.

### 3. Typicality.

In order for Rule 23's typicality requirement to be met, a named plaintiff "may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing FED. R. CIV. P. 23(a)(3)). Typicality is satisfied as long as the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466-67. *see also Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 568 (S.D. Iowa 2011) ("The burden is fairly easily met so long as other class members have claims similar to the named plaintiff.").

Mr. Barrett's claims arise from Selene's practices of accessing a consumer report without a legally permissible purpose, and after a pre-existing debt had been discharged in bankruptcy. As discussed in the previous section, Plaintiff's claims are the same as those advanced on behalf of

8

the settlement class members, and Plaintiff is a member of the settlement class. Plaintiff's claims thus rest on the same legal and factual issues as those of the class members. That is the hallmark of typicality. *See Deiter*, 436 F.3d at 466 (citing Fed. R. Civ. P. 23(a)(3)).

### 4. Mr. Barrett and his counsel are adequate.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To meet this criterion, the representative Lead Plaintiff's interests must be consistent with, and not antagonistic to, those of the Class. Moreover, Lead Counsel must be qualified, competent and diligent." *In re Charter*, 2005 WL 4045741, at *12. As set forth above, Mr. Barrett's claims are aligned with the claims of the Class. Mr. Barrett therefore has every incentive to vigorously pursue the Class Members' claims, as he has done to date.

In addition, Mr. Barrett retained the services of experienced class counsel who have ample experience representing plaintiffs in class actions, including nationwide FCRA class actions. *See* Declaration of Keith J. Keogh and A.J. Stecklein attached hereto as **Appendices 2 and 3**.

### 5. Common questions predominate over any individual issues.

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Here, the Class satisfies Rule 23(b)(3).

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). The

predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, and relate to alleged standardized procedures.

### 6. Class treatment is superior.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because the claims in this case all arise from the same conduct on the part of Selene, a class action is the superior vehicle for determining the rights of absent class members. *St. Louis Heart Center*, 2013 WL 6498245, at *11 ("Because the statutory damages available to each individual class member are small—at most $1500 per violation—it is unlikely that the class members have interest in individually controlling the prosecution of separate actions.")

## IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also* David F. Herr, *Annotated Manual for Complex Litigation,* §21.632 (4th ed. 2004); and *Nieberding v. Barrette Outdoor Living, Inc.*, 2015 U.S. Dist. LEXIS 61825 at *5 (D. Kan. May 12, 2015) (Crabtree, J.)

The first step is a preliminary, pre-notification evaluation to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd Ed.)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110

(9th Cir. 2008); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This is not a final fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and an informal presentation. *See Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process— the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of class action litigation. *See Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969) ("It is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies."); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.") With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although the Court has discretion in deciding whether a settlement should be approved, one of the main factors for evaluating the settlement is the judgment of the Parties that the settlement should be approved. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Ultimately, the Court should approve a class action settlement if it is fair,

11

adequate, and reasonable. *See Id.*; *see also In re Motor Fuel*, 2015 U.S. Dist. LEXIS 110827 at *175 (D. Kan. Aug. 21, 2015), *citing* Fed. R. Civ. P. 23(e)(2). When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In determining whether the proposed settlement is fair, adequate, and reasonable, the following factors are considered: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188.

Here, the proposed Settlement easily meets each factor. The Settlement was fairly and honestly executed because it is the result of ongoing discovery and negotiations by experienced class counsel, with the initial phase of settlement discussions being prompted from a formal mediation conducted by Magistrate Judge Sarah W. Hays. The ultimate outcome was in doubt because of the defenses raised by Selene. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation because the Settlement offers each class member relief without the need to even submit a claim form. Finally, as noted above, and based on the foregoing, it is class counsel's judgment that the settlement is fair and reasonable.[2]

Thus, there should be no doubt that the proposed settlement is in the best interest of class members.[3] Class counsel expects no significant opposition by any class member. In short, the Parties submit that the Settlement should be preliminarily approved.

## VI. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

---

[2] *See* **Appendix 2** (Decl. of Keith J. Keogh) at ¶ 6; **Appendix 3** (Decl. of A.J. Stecklein) at ¶ 9.
[3] *See* **Appendix 2** (Decl. of Keith J. Keogh) at ¶ 6; **Appendix 3** (Decl. of A.J. Stecklein) at ¶ 9.

12

The Agreement includes notice procedures designed to directly reach each member of the class as is practicable. **Appendix 1** at § IV(B). First, after entry of the Preliminary Settlement Approval Order, the Claims Administrator shall cause a notice (**Appendix 1** at *Exhibit 2*) to be sent via regular mail to class members based on Selene's address records, which will advise class members about the Settlement, and specifically advises them of the estimate they will receive, as well as the incentive fee sought by Mr. Barrett, and how attorney fees are paid (specifically, that the incentive fee and attorney's fees will not affect the payment they will receive if they do not opt-out). The notice directs them to the Website www.SeleneFCRASettlement.com, where they can obtain additional information about the Settlement, including the incentive and fee petition that will be filed and the final approval motion. Moreover, Plaintiff proposes to give class members 60 days to evaluate the notice, ask questions and decide how respond to it, which is more than sufficient. *See DeJulius v. New Eng. Health Care Emples. Pension Fund*, 429 F.3d 935, 946 (10th Cir. 2005) (notice sufficient event though most class members given less than 32 days to respond).

The Settlement Web site supplements the mail notice with comprehensive information about the Settlement, plus a copy of the Complaint, the Settlement Agreement, the Preliminary Settlement Approval Order for the class members to review. **Appendix 1** at §IV(B)(3). The notice posted on the site provides settlement class members with a detailed explanation of their options, to enable them to make an informed decision. The notice also provides a toll-free phone number for Settlement Class Members to contact class counsel to ask questions. **Appendix 1** at *Exhibit 2*. A mailed notice combined with a Website for further information is a commonly-approved method for giving notice in class settlements. *See*, *e.g.*, *Hershey v. Exxonmobil Oil Corp.*, 2012 U.S. Dist. LEXIS 50469 at *1-*2 (D. Kan. Apr. 11, 2012); *Berkson v. Gogo, LLC*, 2015 U.S. Dist. LEXIS 163405 at *31 (E.D.N.Y. Dec. 4, 2015); *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1375 (S.D.

Fla. 2007); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) ("All forms of notice directed class members to a website and toll-free number that contained information about the settlement.")

Third, Selene will serve upon the Attorneys General and the Attorney General of the United States notice of the proposed settlement, pursuant to 28 U.S.C. § 1715, within ten days of the filing of the preliminary approval motion. **Appendix 1** at §IV.B.6.

## V. THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING

After adequate notice has been given to the Settlement Class and the government, as required by 28 U.S.C. §1715, a fairness hearing should be held so that the Court may confirm that the Settlement is fair, reasonable and adequate. *See Nieberding v. Barrette Outdoor Living, Inc.*, 2015 U.S. Dist. LEXIS 61825 at *5-*6 (D. Kan. May 12, 2015) (Crabtree, J.).

## VI. DEFENDANTS DO NOT OBJECT TO THE RELIEF REQUESTED

Selene supports the relief requested by Plaintiff in this motion, as Selene agreed to the terms of the Settlement and does not oppose its approval.

## VII. SUGGESTED SCHEDULE

Time is needed to prepare and issue notice to the class members, because they need sufficient time to consider the notice and to decide whether to participate in the class, opt-out, or consult with class counsel to ask any questions that they may have about the Settlement. Accordingly, class counsel suggests the following general scheduling outline for evaluating and concluding this Settlement:

| _____, 2018 [30 days after the date of the Preliminary Approval Order] | Deadline for notice of the Settlement to be sent to the Settlement Class Members |
|---|---|

| | |
|---|---|
| _____, 2018<br>[60 days after the Notice Deadline] | Deadline for Settlement Class Members to request exclusion or file objections (Opt-Out and Objection Deadline) and file any statement of intention to appear at the fairness hearing. |
| _____, 2018<br>[30 days after the Opt-Out and Objection Deadline] | Deadline for Parties to file the following:<br>(1) List of persons who made timely and proper requests for exclusion (under seal); and<br>(2) Proof of Class Notice. |
| _____, 2019<br>[14 days before the Final Approval Hearing] | Motion and memorandum in support of final approval, including responses to any objections. |
| _____, 2019 at \_\_\_\_ \_.m.<br>[240 days after the Preliminary Approval Order] | Final Approval Hearing |

## VIII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court preliminarily approve the proposed settlement and notice plan, and set the matter for a fairness hearing by entering the proposed order attached as **Appendix 1**, *Exhibit 3*, and grant such other and further relief as deemed just.

Respectfully Submitted,

/s/A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Stecklein & Rapp Chartered
748 Ann Ave
Kansas City, KS 66101
Telephone: (913) 371-0727
Facsimile: (913) 371-0727
aj@kcconsumerlawyer.com
mr@kcconsumerlayer.com

Keith J. Keogh (*pro hac vice*)
Amy Wells (*pro hac vice*)
55 W. Monroe Street
Suite 3390
Chicago, IL 60603
Tel: 312-726-1092
keith@keoghlaw.com
awells@keoghlaw.com

*Class Counsel*

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 24, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and thereby served it on all parties.

/s/A.J. Stecklein
A.J. Stecklein
