IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

**DEAN BARRETT**,

                     Plaintiff,

vs.                                     **Case No: 4:17-cv-00985-BCW**

**SELENE FINANCE LP,**

                     Defendant.

## SUGGESTIONS IN SUPPORT OF MOTION FOR AN INCENTIVE AWARD AND AWARD OF ATTORNEY FEES' AND COSTS

Plaintiff, Dean Barrett, individually and on behalf of the Class, moves the Court for an Order awarding him $7,000 for an incentive award and Class Counsel $65,000 in attorney fees, inclusive of costs to be decided at or after the March 8, 2017 Final Approval Hearing. Defendant has agreed to these amounts and any amounts awarded will be paid separate and in addition to the class members recovery.

### I. The Class Settlement Agreement Provides an Award to Class Counsel for the Reasonable Attorneys' Fees and Costs Incurred in Prosecuting this Class Action

The class Settlement Agreement provides that each of the 68 class members will receive $50,150 to be divided pro rata among the class members who do not opt-out. The amount the respective class member receives will depend on the number of times Selene accessed their consumer report after a bankruptcy discharge. There is no claim form requirement such that every class member will receive a check for approximately $425.00 - $2,975.00.

The recovery per class member is even greater when considered in light of the fact that administrative and class notice costs, any incentive award to plaintiff as well as attorney fees and costs will be paid in addition to the settlement fund. ECF No. 46.1(III)(F). In other words, the class member's recovery will not be reduced a penny no matter what the Court awards for an incentive or attorney fees and costs. Along this line, the Settlement Agreement did not provide a

set amount for attorney fees or incentive award, but instead provided that the parties would attempt to negotiate both because the underlying claim is fee shifting as set out below.

Subject to Court approval, the parties have since agreed to an incentive award of $7,000 and attorney fees and costs in the amount of $65,000. Plaintiff has agreed to waive the additional fees incurred leading up to final approval as well as after final approval, which includes substantial time spent discussing the settlement with class members. Once again, whatever amount the Court awards does not decrease or increase the class member's recovery.

## II. The FCRA and This Litigation

This class action arose under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") advanced by Plaintiff and the putative class against Selene Finance LP ("Selene"). To encourage private litigants to enforce the FCRA, Congress wrote the statute to not only provide for damages arising from violations of the Act, but also their attorneys' fees and costs. *See* FCRA §§ 1681n(a)(1)(3) and 1681o(a)(2). Congress intended that a private attorney general concept apply to the FCRA. *Bryant v. TRW, Inc.*, 689 F.2d 72, 79-80 (6th Cir. 1982) ("We have no doubt that Congress intended in authorizing attorney's fees in lawsuits under the FCRA, 15 U.S.C. §§ 1681n, 1681o, to make use of the private attorney general concept"); *Manuel v. Wells Fargo Bank, Nat'l Ass 'n*, 123 F. Supp. 3d 810, 819 (E.D. Va. 2015) (In creating an extensive set of private rights, Congress relies on the private attorney-general concept to enforce those rights).

Courts recognize the "important role of class counsel [] in the consumer protection context" whereby class counsel "protect[s] consumers by enforcing the rights created by the FCRA." *Thomas v. FTS USA, LLC*, No. 3:13cv825 (REP), 2017 U.S. Dist. LEXIS 45217, at *5 (E.D. Va. Jan. 9, 2017). The *Thomas* Court aptly observed:

> Congress's inclusion of the fee-shifting provisions, §§ 1681o(a)(2) and 1681n(a)(1)(3), furthers the enforcement in two ways. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 263, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)

(explaining that Congress allows for reasonable attorneys' fees in statutes to encourage private litigation as a way to implement public policy). First, it encourages Consumer Reporting Agencies ("CRAs") to obey the law; otherwise, they run the risk of paying plaintiffs' attorneys' fees in addition to damages. *Manuel*, 123 F. Supp. 3d at 819-20. Second, by deviating from the American Rule, the statute incentivizes attorneys to prosecute these cases that may otherwise be ignored due to minimal fees for the attorney. Id. at 819 (noting that Congress allows statutory damages in FCRA cases, because of the difficulty in proving an FCRA injury).

*Id* at *5-6.

Although not in dispute because the Settlement Agreement provides that the Plaintiff petition the Court for attorney fees and costs, the facts demonstrate that this is a "successful action to enforce []liability" under the FCRA and that Plaintiff and the Class are entitled to "costs of the action together with reasonable attorney's fees as determined by the court." *See* FCRA §§ 1681o(a)(2) and 1681n(a)(1)(3). As this Court aptly observed in *Kennard v. Kleindienst,* "[t]he Supreme Court clarified that a judgment on the merits or a 'settlement agreement[] enforced through a consent decree' sufficiently changes the relationship of the parties and satisfy the prevailing party standard. *Kennard*, No. 2:14-cv-04017-BCW, 2015 U.S. Dist. LEXIS 90231, at *4 (W.D. Mo. June 5, 2015), *quoting Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001). Indeed, "it seems self-evident that the attorney was successful by resolving the case in their client's favor through a settlement." *Hatfield v. AIH Receivable Mgmt. Servs.*, No. 11-1004-CV-W-SOW, 2013 U.S. Dist. LEXIS 128120, at *9 (W.D. Mo. Mar. 28, 2013).

Class Counsel achieved recoveries greater than what class members would have likely received had they litigated their cases individually and prevailed at trial, as the FCRA provides a stator range when a *willful* violation is proven between $100 and $1,000.00. FCRA § 1681n. Otherwise, consumers are limited to their *actual* damages for a negligent violation § 1681o.

According to the terms of this settlement, class members will receive $425-$2,975.00, based on the number of times Selene accessed their consumer report.

Accordingly, consistent with the parties' agreement and Congressional intent, Plaintiff and the Class are entitled to an award of reasonable attorneys' fees and costs incurred for the work performed to obtain the excellent result in this case.

**III.     Summary of the Litigation and Work Performed**

Consistent with Congress's intent that private citizens bring suits to enforce the FCRA, Plaintiff filed this action in response to Selene's impermissible procurement of his consumer report, to remedy systematic violations of FCRA § 1681b(b)(3)(B) by obtaining consumer reports after a consumer received a bankruptcy discharge. ECF No. 1-2. Plaintiff alleged that Selene procured class members' credit reports was made without a legally permissible purpose after a discharge in bankruptcy eliminated any pre-existing debt or obligation to Selene. *Id.*

The litigation was commenced on October 16, 2017 in the Jackson County Circuit Court. Selene removed the case to the United States District Court for the Western District of Missouri on November 24, 2017 where Selene moved to dismiss the case, and also filed a motion to stay discovery, or alternatively bifurcate class discovery. *See* ECF Nos. 14, 17. Plaintiff opposed both motions and the matters were fully briefed. *See* ECF Nos. 18, 21, 24, 26. During this time, Plaintiff prepared and served written discovery requests upon Selene, and the parties exchanged initial Rule 26(a) disclosures. ECF Nos. 19, 20. Thereafter, Plaintiff moved to amend his Complaint, which Selene opposed. ECF Nos. 28, 30. Upon an Order of Court granting Plaintiff leave to amend, in March 2018, Plaintiff filed his Amended Complaint. ECF No. 32. Selene then moved to dismiss Plaintiff's Amended Complaint. ECF No. 34.

On February 15, 2018, the parties mediated before Magistrate Judge Sarah W. Hays. While the parties did not reach a resolution at the mediation, the settlement discussions continued thereafter and the parties eventually negotiated a settlement. On April 17, 2018, the parties prepared and filed a Joint Notice of Proposed Class Action Settlement. ECF No. 38. Thereafter, over the course of the following months, Class Counsel negotiated and drafted the necessary papers attendant to the Settlement, including the exchange of multiple drafts of the detailed Settlement Agreement. On June 15, 2018, the parties filed their Joint Status Report. ECF No. 40. Class Counsel also had to work on preparing the mailed notice form, long-form settlement notice to be posted with the other settlement documents on Class Counsel's Web site, proposed preliminary approval order and proposed final approval order. (Doc. 46-1). In addition to preparing these documents, Class Counsel drafted a detailed motion for preliminary approval. ECF No. 46.

On August 30, 2018, the Court certified the Settlement Class and granted preliminary approval. ECF No. 49. In doing so, the Court directed the issuance of notice to the class members to apprise them of the Settlement, its terms, and their rights in response thereunder. *Id.* Class Counsel supervised the issuance of the notice and answered class member calls requesting information about the settlement.

Finally, Class Counsel continued to negotiate both the incentive award and attorney fees, ultimately coming to a resolution, which discounts the time spent and excludes work to prepare the instant fee petition, and excludes the time and expenses related to (1) drafting motion for Final Approval; and (2) preparation for and attendance at the Final Approval Hearing in March 8, 2019, including costs related thereto and communicating with the class members after final approval. Plaintiff submits that the fees incurred performing the foregoing work were reasonably incurred. And pursuant to the FCRA's express provision for recovery of fees and costs by a "successful"

plaintiff, Class Counsel respectfully moves the Court for an award of reasonable fees for the above work in the amount of $65,000 inclusive of costs.

## IV. The Lodestar Analysis Supports the Requested Fee and Expense Award

Courts assess a fee award under a reasonableness standard. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 243 (4th Cir. 2010); 15 U.S.C. §§ 1681n(a)(1)(3) and 1681o(a)(2). The case law construing a reasonable attorneys' fee award applies across fee-shifting statutes using similar language. *Doe v. Chao*, 435 F.3d 492, 504 (4th Cir. 2006). Moreover, because the FCRA does not prescribe a method for computing a reasonable attorneys' fee award, courts have flexibility in choosing a methodology to assess the reasonableness of a fee request. *See In Re Microstrategy, Inc.,* 172 F. Supp. 2d at 785 (determining that the court had flexibility, because the fee-shifting provision in the Private Securities Litigation Reform Act did not specify a method); *see also* 15 U.S.C. §§ 1681o(a)(2) and 1681n(a)(1)(3) (not specifying a method for computing the fee).

Although it is usually Class counsel's practice to seek a percentage of the class settlement fund, that practice would not best serve the class here because even though the result for the class was excellent, the fact that there were only 68 class members made it impractical to do so.

In such situations and even in individual cases, courts often consider the lodestar method. *In re Microstrategy, Inc.*, 172 F. Supp. 2d at 785. "Under federal fee-shifting statutes such as FCRA 'the lodestar approach' is 'the guiding light' in determining a reasonable fee. *Miller v. Equifax Info. Servs., LLC,* No. 3:11-CV-01231-BR, 2014 U.S. Dist. LEXIS 70885, at *2-3 (D. Or. May 23, 2014), *quoting Perdue v. Kenny A.,* 559 U.S. 542, 130 S. Ct. 1662, 1671-73, 176 L. Ed. 2d 494 (2010) (internal quotation omitted).

In fee-shifting cases such as the FCRA, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). "The lodestar award (the product of reasonable hours multiplied by a reasonable rate) is presumptively a reasonable fee, and most factors relevant to determining the amount of a fee are subsumed within the loadstar." *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993) (citations omitted).

As this Court has held, to determine the reasonableness of a fee award, district courts may consider the twelve factors set forth in *Hensely. Channel v. Gates & Sons Barbecue of Mo., Inc.,* No. 4:14-CV-00248-BCW, 2016 U.S. Dist. LEXIS 171694, at *2-3 (W.D. Mo. June 2, 2016), *citing Hensley*, 461 U.S. at 457 n.3. A court may consider the following guidelines in formulating a reasonable fee:

(1) the time and labor required;

(2) the novelty and difficulty of the legal questions presented;

(3) the skill required "to perform the legal service properly";

(4) the time devoted to the case at the expense of the attorneys' availability to work on other cases;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) any time limitations;

(8) the amount of damages at issue and the case's success;

(9) the attorneys' experience, reputation, and abilities;

(10) the case's "undesirability";

(11) the nature and length of the attorney's professional relationship with the client; and

7

(12) awards in similar cases.

*Id.*; *Easley v. Anheuser-Busch, Inc.,* 758 F.2d 251, 256 n.25 (8th Cir. 1984). "[T]he court has wide discretion as to which factors to apply and the relative weight to assign to each." *Id, quoting In re Xcel Energy, Inc.,* 364 F. Supp. 2d 980, 993 (D. Minn. 2005) (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F. 3d 849, 854 (10th Cir. 1993); *In re Catfish Antitrust Litig.,* 939 F. Supp. 493, 502 (N.D. Miss. 1996)). But, in applying the factors, the Court gives the most weight to the results obtained. *Hensley*, 461 U.S. at 436; *Chao*, 435 F.3d at 506 ("[t]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained.").

Here, the results for the Class were outstanding. Class members will receive an estimated minimum of $425 -$2,975;[1] alternatively if they were to try their case the statutory range for a willful violation would be between $100 and $1,000.00. FCRA § 1681n. If they were unable to meet the high burden of proving a willful violation, they would be limited to their actual damages, if any, incurred arising from Selene's procurement of their consumer report. Thus, the estimated $425 -$2,975 per class member is substantial.

Plaintiff submits evidence demonstrating the reasonableness of Plaintiff's attorney's fees and costs in this matter. *See* **Exhibits 1 and 2,** Declarations of A.J. Stecklein and Keith J. Keogh. "The lodestar award (the product of reasonable hours multiplied by a reasonable rate) is presumptively a reasonable fee, and most factors relevant to determining the amount of a fee are subsumed within the loadstar." *Casey*, 12 F.3d at 805.

1. **The Hours Incurred Are Reasonable**

The reasonableness of the time recorded in the Billing Statements is confirmed by the declarations of Plaintiff's counsel. The principal attorneys in this case are AJ Stecklein, Michael

---

[1] Depending on how many times Selene pulled his/her consumer report.

Rapp, Matthew Robertson, Keith Keogh, and Amy Wells ("Class Counsel"). Each has extensive experience, both in class action litigation and prosecution of consumer rights cases, including extensive experience litigating FCRA claims. *See* **Exhibit 1**, Declaration of Keith Keogh ¶ 2, 7–9, 11–17 and **Exhibit 2, Declaration of AJ Stecklein ¶ 6, 9, 11–12** (collectively Class Counsel has well over 50 years of litigation experience). Class Counsel has litigated hundreds of consumer protection cases, including in the FCRA class context, and each are keenly aware of the amount of time required litigate these type of matters.

### 2. The Hourly Rates Are Reasonable.

The second part of the two-part lodestar inquiry is determining the rates to be used to calculate the award. To encourage capable counsel to undertake FCRA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those that they could obtain by taking other types of cases. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988) *quoting Blum v. Stenson*, 465 U.S. 886, 897, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ("A reasonable [attorney's] fee is 'one that is adequate to attract competent counsel…")

Under Eighth Circuit precedent, the Court properly considers whether the hourly rates Plaintiff requests are reasonable in light of prevailing rates in the community for comparable services by lawyers of reasonably comparable skill, experience, and reputation. *See Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir. 1985). When determining reasonable hourly market rates, district courts may rely on their own experience and knowledge of prevailing rates in the community. *See Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2004); *Hanig v.* Lee, 415 F.3d 822, 825 (8th Cir. 2005)." Additionally, comparison of Plaintiffs' requested fees to the fees Defendants paid their attorneys may also be relevant to determining reasonableness. *See Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1220 (8th Cir. 1981).

But while "a reasonable hourly rate generally means 'the ordinary fee for similar work in the community'" (*Little Rock Sch. Dist. v. State Ark. Dep't of Educ.*, 674 F.3d 990, 997 (8th Cir. 2012), *quoting Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140-41 (8th Cir. 1982) (citations omitted)), rates are not limited to those prevailing in a local community where those rates would not be "sufficient to attract experienced counsel" in a specialized legal field. *Casey*, 12 F.3d at 805. In such a case, "[a] national market or a market for a particular legal specialization may provide the appropriate market." *Id*. (*quoting Hendrickson v. Branstad*, 740 F. Supp. 636, 642 (N.D. Iowa 1990), *rev'd in part on other grounds*, 934 F.2d 158 (8th Cir.1991)). The *Avalon* Court aptly held:

> This does not mean that out-of-town counsel must always be limited to lower local rates. It may not always be possible to find counsel in or near the locality of the case who are able and willing to undertake difficult and controversial civil-rights litigation.

*Avalon Cinema*, 689 F.2d at 140-41. "The rate charged should also take into account the experience, skill, and expertise of the attorneys as well as the complexity, significance, and undesirability of the case." *Casey.*, 12 F.3d at 805. *See also Hendrickson*, 934 F.2d at 164 (affirming higher rate, based on comparable nationally prominent federal civil rights counsel, rather than Iowa counsel, because of attorney's status as recognized national expert in civil rights law). Along these lines, while Plaintiff's Chicago-based counsel (Mr. Keogh and Ms. Wells) may have a higher hourly rate than the local market based on their geographic location, this is acceptable in complex class litigation and the results achieved illustrate that they are not unjustly inflated rates. Further, the true hourly rate would be lower if one were to factor into the time excluded.

Class Counsel's rates for this case are $400.00 per hour for Mr. Stecklein, Plaintiff's Kansas City-based counsel. This hourly rate was recently approved for Mr. Stecklein by Chief District Judge Julie Robinson of the U.S. District Court for the District of Kansas. *Farabee v.*

10

*Perfection Collection LLC*, No. 17-cv-2528-JAR-GEB, 2018 WL 3495843, at *6–*7 (D. Kan. July 20, 2018). Additionally, Michael Rapp and Matthew Robertson, attorneys at Stecklein & Rapp contributed time to this matter, with billable rates of $325.00 and $250.00, respectively. Plaintiff's Chicago-based counsel, Mr. Keogh and Ms. Wells bill $600 and $500 per hour, respectively. Paralegals were billed at $175.00 per hour. These rates are reasonable compared to attorneys of equivalent experience in this market. (*See* **Exhibit 1** (Keogh Declaration) at ¶18–19 and **Exhibit 2** (Stecklein Declaration) at ¶ 2–3, 15. Keogh Law, Ltd. is a "national practice" firm, and Mr. Keogh is a "nationally recognized consumer protection attorney."[2] *Castro v. Lloyd & McDaniel, PLC*, No. 15-cv-559, 2016 U.S. Dist. LEXIS 127658, *12 (S.D. Ind. Sept. 19, 2016). Mr. Keogh and Ms. Wells have been appointed class counsel numerous times, and have 19 and 14 years of experience, respectively. (**Exhibit 2** (Keogh Declaration)). Likewise, Mr. Stecklein has 23 years of litigation and trial experience, including nearly a decade of consumer litigation experience. Messrs. Rapp and Robertson have six and two years of consumer litigation experience, also including extensive class action experience. (**Exhibit 2** (Stecklein Declaration) at ¶15 - ¶16)).

It is well-accepted that class actions are complex. Indeed, "FCRA, particularly in the class action context, is a complex and challenging area of law." *White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1172 (C.D. Cal. 2014). And complex litigation involves a national standard and special expertise. *See, e.g., Torgeson*, 2007 U.S. Dist. LEXIS 9332, 2007 WL 433540 at *6; *Dobson v. Hartford Fin. Services Group, Inc.*, 2002 U.S. Dist. LEXIS 17682, 2002 WL 31094894 at *3 (D. Conn. Aug. 2, 2002); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003). "The procedural consequences of the maintenance of a class action are time consuming, complex, and of a serious nature." *Borovac v. Amalgamated Meat*

---

[2] Mr. Keogh was awarded the Consumer Attorney of the Year for 2015 by the National Association of Consumer Advocates.

*Cutters & Butcher Workmen*, No. 72-0-299., 1973 U.S. Dist. LEXIS 12610, at *3 (D. Neb. July 20, 1973), *quoting* 3B Moore's Fed. Prac. P23.02-2, p. 23-156 (2d Ed. 1969).

By way of comparison, another court in this District found that where the class counsel were experts in the complex subject matter (ERISA in that case), the court reasoned as follows:

> a reasonable rate in this case would be best assessed against national rates for complex specialized litigation. The Court may also take into account awards in similar cases. In a 2009 case involving Plaintiff's counsel, …the court approved hourly rates for this firm according to the following schedule: for attorneys with 25 years or more experience, $800 per hour; for attorneys with 15-24 years of experience, $625 per hour; 5-15 years of experience, $450 per hour; 2-4 years of experience, $325 per hour; and for professional support staff, $125 per hour. *Eshelman v. Client Services, Inc., et al.*, No: 0822-cv-00763 (22d Cir. Mo. Dec. 7, 2009). (citation omitted).

*Tussey v. ABB, Inc.*, No. 06-04305-CV-C-NKL, 2012 U.S. Dist. LEXIS 157428, at *9 (W.D. Mo. Nov. 2, 2012). Accordingly, while Selene may argue that the rates of Mr. Keogh and Ms. Wells exceed prevailing local market rates, it is appropriate to employ out-of-town counsel's regular rates in certain circumstances. Mr. Keogh and Ms. Wells were engaged to give Plaintiff and the Class the best chance of success. (**Exhibit 2** (Stecklein Declaration) at ¶ 19). One court concluded these factors justified the approval of rates similar to Plaintiff's Chicago-based counsel in a Fair Debt Collections Practices Act case[3], despite the defense claim that the rates were higher than the local average:

> In this action, the Court notes that the complaint was made under the FDCPA, which is a national statute; the Philipps firm has obtained national prominence in litigating claims under the statute; and the Philipps attorneys are experienced class-action attorneys. In fact, local Indianapolis counsel referred Mr. Castro's case to the Philipps firm because they felt that the Philipps firm was better equipped to handle the matter. (Filing No. 71 at 5.) Therefore, even if the rates sought by the Philipps firm are higher than the Indianapolis average, given the specialty of the firm, the complexity of the FDCPA, and the experience of the Philipps firm, the rates are reasonable.

---

[3] FCRA is regarded by most consumer advocates as *much more* complex than FDCPA.

*Castro*, 2016 U.S. Dist. LEXIS 127658, at *15. Like the Fair Debt Collection Practices Act (or FDCPA), the FCRA is a federal consumer protection statute commanding heightened expertise, particularly when litigated on a class-wide basis.

Class Counsel's rates are further justified by the Consumer Price Index Adjusted Laffey Matrix, a well-established, objective source. *See Redman v. Radioshack Corp.*, No. 1:11-cv-06741, 2014 U.S. Dist. LEXIS 15880, at *32 (N.D. Ill. Feb. 07, 2014) (relying on CPI adjusted Laffey Matrix); *Ricks v. Barnes*, No. 05-cv-1756, 2007 U.S. Dist. LEXIS 22410, at *16 (D.D.C. Mar. 28, 2007) (finding Updated Matrix rates reasonable); *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13–15 (D.D.C. 2000) (relying on CPI adjusted Laffey Matrix); *Kempf v. Barrett Bus. Servs.*, No. 06-cv-3161, 2007 U.S. Dist. LEXIS 89447 (N.D. Cal. Nov. 20, 2007) (finding fees reasonable when compared to rates in the Updated Matrix). Under the matrix, all counsel's rates would be substantially higher. (**Exhibit 1** (Keogh Declaration) and http://www.laffeymatrix.com/see.html (last visited October 13, 2018).

The reasonableness of Class Counsel's rates is also demonstrated by the risk undertaken to file this case. Because of the limits on recoverable statutory damages in FCRA cases, the hourly rates charged in consumer protection cases are, of necessity, "contingent fee" rates. Contingent fee rates are normally higher than the rates charged by attorneys who get paid "win or lose" by hourly clients, or attorneys who receive a steady stream of regular business from their clients in exchange for a lower hourly rate. As Judge Posner of the Seventh Circuit explained in his book, *Economic Analysis of Law*, (7th ed. 2007):

> A contingent fee must be higher than a fee for the same legal services paid as or after they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is high because of the risk of default (the loss of the case, which cancels client's debt to the lawyer) is much higher than in the case of conventional loans, and the total amount of interest is large not only because the interest rate is

high but because the loan may be outstanding for years – and with no periodic payment, a device for reducing risk borne by the ordinary lender.

*Id.*; *see also*, *e.g.*, *Connolly v. Harris Trust Co. of Ca.*, 309 F.3d 1234, 1243 (10th Cir. 2002) ("The contingent fee trial lawyer generally advances his own money to finance litigation. He enters his appearance before a court and does every task that the litigation requires, personally or through other attorneys he employs, from drafting the complaint to making the closing argument. Having entered his appearance, he has no right to withdraw and his time commitment is not limited or flexible."). As observed by this Court in *Channel*:

> Relatedly, counsel represented Channel on a contingency basis. Awarding attorneys' fees in a contingency fee case promotes the goals of the FLSA and encourages attorneys to represent individual employees in the pursuit of their rights. *Albers v. Tri-State Implement, Inc.*, No. CR. 06-4242-KES, 2010 U.S. Dist. LEXIS 23450, 2010 WL 960010, at *26 (D.S.D. Mar. 12, 2010). An award of attorneys' fees in this case accounts for the added risk associated with representing a client on a contingent-fee basis. *See Jackson* [*v. Crews*], 873 F.2d [1105,] 1110 [(8th Cir. 1989)].

*Channel,* 2016 U.S. Dist. LEXIS 171694, at *6.

Finally, Class Counsel seek a $175.00 hourly rate for the work of their paralegals. This is also consistent with prevailing market rates for "experienced paralegal[s]." *See Farabee v. Perfection Collection LLC*, No. 17-cv-2528-JAR-GEB, 2018 WL 3495843, at *7 (D. Kan. July 20, 2018); *Channel,* 2016 U.S. Dist. LEXIS 171694, at *4. In short, Class Counsel's rates are reasonable.

### C. Other Factors Also Support the Proposed Award.

Although the lodestar is the presumptively reasonable fee, the presumption may be enhanced or reduced by other factors, such as the results obtained and skill requisite to perform the legal service properly. *Casey*, 12 F.3d 805; *also see Channel* 2016 U.S. Dist. LEXIS 171694, at *2-3, *citing Hensley*, 461 U.S. at 457 n.3.

The Supreme Court has stated that "'the most critical factor' in determining the reasonableness of the award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (*quoting Hensley*, 461 U.S. at 436). Class Counsel obtained a class-wide settlement in a contested case with experienced class counsel defending Selene. And the result obtained for class members exceeded the result likely to be obtained had each class member advanced an individual claim. Here, Class members will receive an estimated minimum of $425 -$2,975.[4] Contrarily, if they were to try their case on their own, they would be limited to the statutory range for a willful violation of $100 and $1,000.00 (FCRA § 1681n) or otherwise be limited to their actual damages. FCRA § 1681o. No greater degree of success was reasonably obtainable.

Likewise, the degree of skill needed to obtain this result was significant. Class action litigation is a highly specialized area that relatively few attorneys practice. District courts have widely accepted that FCRA class actions are complex in nature. *See White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1172 (C.D. Cal. 2014) ("The FCRA, particularly in the class action context, is a complex and challenging area of law."); *Holman v. Experian Info. Sols., Inc.*, No. 11-cv-0180 CW (DMR), 2014 U.S. Dist. LEXIS 173698, at *11 (N.D. Cal. Dec. 12, 2014).

Indeed, that is why Mr. Keogh and Ms. Wells were brought into the case. The class members benefitted from their specialized knowledge, which contributed significantly to the very successful result. Exhibit 2 (Stecklein Declaration) ¶ 19.

Finally, as noted above, the fee and cost award was entirely contingent on reaching a successful outcome. In short, not only is Class Counsel's lodestar presumptively reasonable, but additional factors further support the proposed award.

### D. The FCRA's Limit on Statutory Damages Cannot Justify a Reduced Fee

---

[4] Depending on how many times Selene pulled his/her consumer report.

Selene may argue that Class Counsel's fee award should be reduced because it exceeds the statutory damages recovered for Plaintiff and the Class. The U.S. Supreme Court has considered the question of proportionality in attorney-fee awards for civil-rights violations and rejected the proposition that "fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recover." *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986). The Supreme Court reasoned as follows:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting section 1988.

*Id.* Similarly, in the context of the FCRA, the Fourth Circuit correctly held:

> Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955, 959 (D. Minn. 2011), *quoting Yohay v. City of Alexandria Emps. Credit Union, Inc.*, 827 F.2d 967, 974 (4th Cir. 1987); *Bryant v. TRW, Inc.*, 689 F.2d at 80 (refusing to reduce fees " because we believe that the policies informing the Civil Rights Attorney's Fee Award Act of 1976, 42 U.S.C. § 1988, which led this court in Northcross to "conclude that a fee calculated in terms of hours of service provided is the fairest and most manageable approach," 611 F.2d at 636, apply with equal force to the FCRA."); *United States Football League v. National Football League*, 887 F.2d 408, 413 15 (2nd Cir. 1989) upheld a $5.5 million fee award on $3.00 recovery. *United States Football* was cited with approval by the Seventh Circuit in *Blue Cross & Blue Shield United v. Marshfield Clinic*, 152 F.3d 588, 595 (7th Cir. 1998) when the Seventh Circuit reversed denial of attorney fees. Indeed, fee awards in civil rights and consumer protection matters regularly exceed the plaintiff's recovery. E.g., *City of Riverside*, at 580 (awarding $245,450 fees on a $33,350 recovery, including 143 hours for trial

16

preparation); *Grant v. Martinez*, 973 F.2d 96, 101 (2nd Cir. 1992) (fee award of $500,000 on $60,000 settlement); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F. 2d 1053, 1057 (2nd Cir. 1989) ($415,000 fee for recovering $2,689.02 monthly pension).

Given the statutory range of $100 to $1,000 for individual plaintiffs where there is a willful violation, and a limitation of actual damages where the violation is negligent, it is inevitable that fees will exceed damages in any case where the defendant mounts a defense. *See*, *e.g.*, *Disciullo v. D'Amrosio Dodge, Inc.*, No. 06-cv-1775, 2008 WL 4287319, *1, *10 (E.D. Pa. Sept. 18, 2008) (awarding $151,691.99 in fees and costs where the damages were $45,000); *Matthews v. First Revenue Assurance*, LLC, No. 00-C-3711 (N.D. Ill. Feb. 14, 2002) (approving settlement awarding $6,492 in damages and $56,000 in attorneys' fees); *Riter v. Moss & Bloomberg, Ltd.*, No. 96-cv-2001, 2000 WL 1433867, at *7 (approving $173,054 in fees and $13,859 in expenses for two cases with minimal damages).

### IV. The Costs and Expenses Incurred Are Reasonable

In addition to fees, Plaintiff is also entitled to an award of costs. FCRA §§ 1681n(a)(1)(3) and 1681o(a)(2). The documented costs for which Class Counsel seek reimbursement are limited, and include only the original filing fee, and travel expenses (airfare and hotel) necessitated by the mediation.[5] (**Exhibit 1** (Keogh Declaration) at ¶4; **Exhibit 2** (Stecklein Declaration) at ¶4). As discussed, costs for upcoming fees as well as costs, such as those associated with airfare and lodging related to the March 2019 final fairness hearing, are not included. These sums are recoverable by a prevailing party under the FCRA and should be awarded. *Rouse v. Hennepin Cnty.*, No. 12-326 (DWF/SER), 2016 U.S. Dist. LEXIS 76057, at *9 (D. Minn. June 9, 2016); *Carter v. McDonald's Rests.*, No. EDCV-15-01531-MWF-(JCx), 2017 U.S. Dist. LEXIS 221012,

---

[5] The costs sought exclude expenses for postage, copying and legal research.

at *17-18 (C.D. Cal. Mar. 15, 2017) ("The Court agrees that the expenses incurred here are for activities routinely billed for by attorneys in this type of litigation, such as document production, depositions, travel, and mediation costs.")

### V. Incentive Award

"[I]ncentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Shaw v. Interthinx, Inc.*, 2015 U.S. Dist. LEXIS 52783, *24 (D. Colo. 2015); *see also Jones v. I.Q. Data Int'l, Inc.*, 2015 U.S. Dist. LEXIS 137209, * 5 (D. N.M. 2015) (approving service award to the named plaintiff in the amount of $20,000 out of a $1,000,000 settlement fund).

Courts have approved service awards on the basis that class representatives take risks and perform services for the benefit of the Class. *See* Albert Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.). This is no doubt true in this case. Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." *In re Cont'l I*, 962 F. 2d 566, 571 (7th Cir. 1992).

In addition to lending his name to this matter, and thus subjecting himself to public attention, Plaintiff was actively engaged in this litigation. Among other things, he (1) attended numerous in-person meetings with Class Counsel, (2) communicated with Class Counsel via email and telephone throughout the litigation to stay apprised; (3) reviewed the pleadings to stay apprised; (4) attended with Class Counsel the mediation, and (5) participated in subsequent negotiations and reviewed the ultimate settlement agreement to make sure it was fair to absent class members, and produced himself for a deposition that lasted approximately 4 hours. *See Exh. 2*, ¶ 7.

It is appropriate to reward these efforts with reasonable service awards. *See e.g. Lees v. Anthem Ins. Cos.*, 2015 U.S. Dist. LEXIS 74902, *10-11 (E.D. Mo. 2015) (citing cases and approving service award of $10,000 for named Plaintiff); and appropriate"); see also *Hoeflicker v CPC*, 15-cv-00679-BP (W.D. Mo. ) (FCRA class action where named Plaintiff received $10,000 incentive award.). Thus, the requested service award, which Defendant does not oppose of $7,000 for the named Plaintiff is reasonable.

## VI.     Conclusion

Plaintiff is entitled under the Settlement Agreement to reasonable attorney fees and costs, and the fact that the Class recovered more than they would likely have obtained at trial illustrates the appropriateness of the fees and costs sought. Plaintiff respectfully submits Class Counsel should be awarded $65,000 in fees, inclusive of costs.

Respectfully Submitted,

By: /s/ *A. J. Stecklein*
A.J. Stecklein #46663
Stecklein & Rapp Chartered
748 Ann Ave
Kansas City, KS 66101
Telephone:  (913) 371-0727
Facsimile:  (913) 371-0727
Email:  aj@kcconsumerlawyer.com

Keith J. Keogh (*pro hac vice*)
Amy L. Wells (*pro hac vice*)
Keogh Law, Ltd.
55 West Monroe Street
Suite 3390
Chicago, Illinois 60603
(312) 726-1092
Email: keith@keoghlaw.com
         awells@keoghlaw.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Clerk of the Court's electronic filing system on October 15, 2018 which is automatically notifying counsel of record.

/s/ A.J. Stecklein
Attorney for Plaintiff
